IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

DEXTER WHITE,                          )
                                       )
            Plaintiff,                 )
                                       )
      v.                               )      CIVIL ACTION NO. 1:14cv653-TFM
                                       )                 (WO)
CAROLYN W. COLVIN, Acting              )
Commissioner of Social Security,       )
                                       )
            Defendant.                 )

## MEMORANDUM OPINION

## I. PROCEDURAL HISTORY

The plaintiff, Dexter White ("White"), applied for disability benefits pursuant to Title

II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*., and for supplemental security income

benefits pursuant to Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.*, on March

7, 2011, alleging that he is unable to work because of a disability.  White's application was

denied at the initial administrative level. White then requested and received a hearing before

an Administrative Law Judge ("ALJ").   Following the hearing, the ALJ determined that

White is not disabled. The Appeals Council rejected a subsequent request for review.  The

ALJ's decision consequently became the final decision of the Commissioner of Social

Security ("Commissioner").[1]  *See  Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

The parties have consented to the undersigned United States Magistrate Judge rendering a

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

final judgment in this lawsuit.  The court has jurisdiction over this lawsuit under 42 U.S.C. §§ 405(g) and 1383(c)(3).[2]  Based on the court's review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner is due to be REVERSED and REMANDED.

## II.  STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .

To make this determination,[3] the Commissioner employs a five-step, sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?

> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

---

[2] Title 42 U.S.C. §§ 405(g) and 1383(c)(3) allow a plaintiff to appeal a final decision of the Commissioner to the district court in the district in which the plaintiff resides.

[3] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[4]

The standard of review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A reviewing court may not look only to those parts of the record which support the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

## III. INTRODUCTION

### A. The Commissioner's Decision

White was 53 years old at the time of the hearing before the ALJ. R. 42. He attended special education classes and holds a special education pre-vocational diploma from Enterprise High School. R. 43, 141.

---

[4] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981) (Unit A).

White alleges that he became disabled on January 1, 1995, due to a burning sensation in his legs, headaches, depression, high blood pressure, blurry vision, and ulcers. R. 214. After the hearing, the ALJ found that White suffers from severe impairments of hypertension, headaches, and borderline intellectual functioning.  R. 22.  The ALJ found that White has no history of past relevant work, but that he has the residual functional capacity to perform medium work "except [he] can perform no more than simple repetitive routine tasks in a job that requires little to no reading, and not above language level of 1." R. 24.  Testimony from a vocational expert led the ALJ to conclude that a significant number of jobs exists in the national economy that White could perform, including work as a laundry worker and stocker. R. 29.  Accordingly, the ALJ concluded that White is not disabled.  R. 30.

### B.    The Plaintiff's Claims

White presents the following issues for review:

(1)    Whether the ALJ erred as a matter of law by failing to properly evaluate his borderline intellectual functioning as a listed impairment pursuant to 20 C.F.R. 404, Subpt P, App. 1 § 12.05C.

(2)    The ALJ failed to properly evaluate the opinions of Dr. Samuel Williams.

Doc. 12, Pl's Br., p. 1.

## IV.  DISCUSSION

White argues that the ALJ erred as a matter of law by failing to evaluate his borderline intellectual functioning as a listed impairment under Section 12.05C at step three of the sequential evaluation.

Listing 12.05, *Intellectual disability*, provides, in pertinent part, that a claimant is disabled if he meets the following criteria:

> § 12.05. *Intellectual disability.*  Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied . . .
>
> C. A valid verbal, performance, or full scale I.Q. of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function.

*See* 20 C.F.R. Pt. 440, Subpt. P. App. 1, Listing 12.05C.[5]

"The structure of the listing for intellectual disability (12.05) is different from that of the other mental disorders listings."  20 C.F.R. Pt. 404, Subpt. P. App. 1, 12.00 MENTAL DISORDERS.

> To meet listing 12.05 ("intellectual disability"), "claimant must at least (1) have significantly subaverage general intellectual functioning; (2) have deficits in adaptive behavior; and (3) have manifested deficits in adaptive behavior before age 22." *Crayton*, 120 F.3d at 1219.  These requirements are referred to as the listing's "diagnostic criteria." *See* 20 C.F.R. pt. 404, subpt. P., app. 1, § 12.00 ("Listing 12.05 contains an introductory paragraph with the diagnostic description for [intellectual disability].")  In addition to satisfying the diagnostic criteria, a claimant must meet one of the four severity requirements in paragraphs A through D of the listing. *See id.* § 12.05.  Under paragraph C, the only paragraph at issue here, a claimant must show that [he] has both "[a] valid, verbal, performance, or full scale IQ score of 60 through 70 and a physical or other mental impairment imposing an additional and

---

[5] After the ALJ entered his decision, Listing 12.05C replaced  the term "Mental Retardation" with "Intellectual Disability." The analysis, however, is the same. The Commissioner argues that the lack of a diagnosis of mental retardation establishes that Plaintiff does not meet Listing 12.05C.  A specific diagnosis of mental retardation, however, is not necessary to meet the Listing.

significant work-related limitation of function."

*Frame v. Comm'r, Soc. Sec. Admin.*, — F. App'x. —, 2015 WL 150733, *2 (11th Cir. 2015) (No. 13-15347).

Consequently, "a claimant meets the criteria for presumptive disability under section 12.05(C) when the claimant presents a valid IQ score of 60 to 70 inclusive, and evidence of an additional mental or physical impairment that has more than 'minimal effect' on the claimant's ability to perform basic work activities." *See Monroe v. Comm'r of Soc. Sec.*, 504 F. App'x. 808, 810 (11th Cir. 2013) *quoting Lowery v. Sullivan*, 979 F.2d 835 (11th Cir. 1992). *See also Edwards v. Heckler*, 755 F.2d 1513, 1517 (11th Cir. 1985). In this Circuit, "a claimant need not present evidence that [he] manifested deficits in adaptive deficits manifested prior to the age of twenty-two, when [he] presented evidence of low IQ test results after the age of twenty-two." *Monroe*, 504 F. App'x. at 810 *quoting Hodges v. Barnhart*, 276 F.3d 1265, 1266 (11th Cir. 2001). *See also Burt v. Barnhart*, 151 F. App'x. 817, 819 (11th Cir. 2005).

In an effort to clarify the Listing, the Introduction to Listing 12.00 MENTAL DISORDERS, 20 C.F.R. Pt. 404, Subpt. P. App. 1, 12.00, explains that the Commissioner "will find that you have a listed impairment if the diagnostic description in the introductory paragraph *and* the criteria . . . of the listed impairment are satisfied." *Id*. (emphasis added). Unfortunately, the Administration did not define either the diagnostic elements to be satisfied within the introductory paragraph or the standard by which to measure those elements. However, the Listing's plain language compels a conclusion that to meet or equal Listing

12.05C, a claimant is required to demonstrate some measure of deficits in adaptive functioning.

In an unpublished opinion, the Eleventh Circuit refers to the Social Security Administration's own manual in an effort to more specifically determine "adaptive functioning."

> The Social Security Administration's Program Operations Manual System (POMS) states that the phrase "adaptive functioning" refers to "the individual's progress in acquiring mental, academic, social and personal skills as compared to other unimpaired individuals of his/her same age." POMS DI 24515.056(D)(2). Similarly, the American Psychiatric Association states that the phrase refers to how effectively an individual copes with the common demands of life and how well the individual meets the standards for personal independence expected of someone in [his] particular age group, sociocultural background, and community setting. *Diagnostic and Statistical Manual of Mental Disorders IV-TR*, at 42 (4th ed. 2000); *see also Talavera v. Astrue*, 697 F.3d 145, 153 (2d Cir. 2012) (explaining that the phrase "adaptive functioning" in Listing 12.05 refers to an individual's ability to cope with the challenges of ordinary life.

*Hickel v. Comm'r of Soc. Sec.*, 539 F. App'x. 980, 983 fn.4 (11th Cir. 2013) (No. 13-11172).

During the hearing before the ALJ, counsel argued that White's full scale IQ score of 67 combined with his physical problems meets the Listing. The problem, however, is that the ALJ never discussed Listing 12.05C in his analysis.

The record indicates that White's IQ scores meet the criteria for presumptive disability under section 12.05C. White's school records indicate he struggled academically. For example, White received failing grades in English, Math, and Social Studies and repeated the seventh grade. R. 142. Despite failing English, Math, and Science, he was "socially promoted" to the next grade. *Id*. White's grades improved in ninth grade special education

classes. *Id*. When White was fifteen years old , he scored a 70 in verbal intelligence, a 97 in performance, and a full scale intelligence quotient of 81 on the Weschler Intelligence Scale for Children. R. 174. The State of Alabama Department of Educational Vocational Rehabilitation listed White's major disabling condition as mental retardation and referred him to vocational rehabilitation classes, specifically noting that mental retardation with a full scale IQ score of 81 "renders him a definite handicap to academic achievement and gainful employment." R. 187.

He was subsequently placed in vocational classes. In 1977, his high school vocational teacher noted that "Dexter can do good work when he wants to[]. He requires a great deal of guidance and supervision." R. 147. On another occasion, the teacher noted that he was "very motivated in class." R. 148. During his junior year in special education classes, White received failing grades in Reading. His grades improved his senior year and he received a C in Reading. White graduated from high school in 1978. R. 141. During the hearing, White stated that he "don't even see how he really graduated" because he is unable to do simple mathematics and cannot read. R. 43.

On May 11, 2011, Dr. Randall Jordan, a clinical psychologist, conducted a consultative psychological evaluation and testing. R. 467. On the WAIS-IV, White received a verbal score of 68, a performance score of 71, a working memory score of 77, and a full scale score of 67. Dr. Jordan found that White's full scale IQ score falls in the mentally retarded range and corresponds to the first percentile. *Id*. His diagnostic impression was depressive disorder NOS, borderline intellectual functioning, and multiple pain sites. *Id*. Dr.

8

Jordan noted that White was motivated and cooperative with the examination process and that evidence of malingering was not present. *Id*. He concluded that physical issues seem to be the primary limiting factor in terms of vocation and that continued medical care is needed. R. 468. Given the overwhelming evidence of academic struggles and below average IQ scores, as well an additional depressive disorder, the court cannot conclude that the ALJ's failure to discuss 12.05C is harmless or that his implicit rejection of the Listing is supported by substantial evidence.

The second prong of the Listing requires "evidence of an additional mental or physical impairment that has more than "minimal effect" on the claimant's ability to perform basic work activities." *Lowery*, 979 F.2d at 837; *Edwards*, 755 F.2d at 1517. The record is replete with references to White's additional physical impairments. On July 3, 2008, White went to Medical Center Enterprise with complaints of lower back pain. R. 386. An emergency room physician's clinical impression was acute low back pain. R. 387. White was prescribed Robaxin and Ultram and advised to return to the hospital if his symptoms did not improve. *Id*.

On August 16, 2008, he returned to Medical Center Enterprise complaining of dizziness and headache. R. 401, 404. A CT scan of the head indicated small vessel disease and old right thalamic lacunar infarct. R. 400. In a pathology report, the pathologist noted "elevated levels of HbA1C suggest[ing] the need for more aggressive treatment of glycemia." R. 395, 409. The emergency room physician's clinical impression was hypertensive urgency, medical non-compliance, substance abuse, and borderline hypoglycemia. R. 403. Upon

discharge, White was prescribed hydrochlorothizide and K-Dur.  *Id.*

On February 23, 2009, White was admitted to Medical Center Enterprise with complaints of lightheadedness and right hand numbness.  R. 340.   A CT scan indicated a small vessel ischemic change bilaterally and some focal disease in the right anterior ethmoid region. R. 359.   A physician diagnosed "hypertensive crisis in a patient with chronic hypertension, [] evidenced by left ventricular hypertrophy on electrocardiogram and left ventricular hypertrophy on chest x-ray.  Cocaine certainly may have accelerated this with hyperdynamic response." R. 341.   Upon discharge, the physician noted that White "is remorseful of his [cocaine] habit" and that he "seems as if he is going to follow through with [a drug rehabilitation] plan."  R. 364.

On March 5, 2009, White returned to Medical Center Enterprise complaining of edema to the lower extremities.  R. 412.   A physician's clinical impression was essential hypertension, drug abuse, and peripheral edema.  R. 415.

On July 15, 2010, White presented to Enterprise Express Care requesting refills of his blood pressure medications.  R. 428.   He reported to Dr. Walter J. Lawrence that he was recently released from the Coffee County Jail, where he was prescribed lisinopril, diltiazem, atenolol, metoprolol, Zantac, and HCTZ.  *Id.*   He stopped taking all of the medications, except atenolol, for a week because he ran out of pills.  *Id.*   The physician contacted the nurse at the jail.  She reported that "patient was extremely difficult to get under good blood pressure control" and that he "has a history of taking considerable amounts of baking soda" because he believes it "helps his gastric reflux." *Id.*

On March 31, 2011, White returned to Medical Center Enterprise complaining of high blood pressure and a headache. R. 446. The results of a drug urinalysis were negative. R. 451, 453. An emergency room physician's clinical impression was accelerated hypertension and acute non-specific headache. R. 448.

On May 3, 2011, Dr. Mark B. Ellis conducted a consultative physical evaluation. The physician found no muscle atrophy and assessed that White "did not give his best effort in the examination procedures today" and that "his reduction in range of motion is secondary to his complaints that every movement and everything hurts him." R. 461.

Between May 2011 and August 2012, Dr. Russell Cook provided White routine treatment for his complaints of high blood pressure, including blood pressure checks and renewal of prescriptions. R. 509-13, 531-38. On September 21, 2011, White complained of blurred vision and an occasional throbbing headache. R. 510. On September 26, 2011, White also complained that his stomach was bothering him. *Id*. On January 23, 2012, White complained of a burning sensation from his neck to his left arm. R. 535. On February 12, 2012, Dr. Cook noted that White was sent to the emergency room with complaints of a headache and high blood pressure. R. 535. On April 16, 2012, White complained of left arm tingling and right shoulder pain. R. 534.

Although the ALJ found that White suffers from severe impairments of hypertension and headaches, the ALJ failed to discuss whether these or any other physical or other mental impairments, such as a depressive disorder, impose additional and significant work-related limitations of function. The ALJ is not free to simply ignore medical evidence, nor may he

11

pick and choose between the records selecting those portions which support his ultimate conclusion without articulating specific, well supported reasons for crediting some evidence while discrediting other evidence. *Marbury v. Sullivan*, 957 F.2d 837, 840-41 (11th Cir. 1992). It is plain that the plaintiff suffers from physical and non-physical impairments, but it is less clear as to the effect of those impairments. "Even a 'mild' mental impairment may 'prevent [a] claimant from engaging in the full range of jobs contemplated by the exertional category for which the claimant otherwise qualifies.'" *Allen v. Sullivan*, 880 F.2d 1200, 1202 (11th Cir. 1989) (quoting *Gagnon v. Sec'y of Health and Human Serv.*, 666 F.3d 662, 666 n. 8 (1st Cir. 1981)). The ALJ must consider every impairment alleged by the plaintiff and determine whether the alleged impairments are sufficiently severe – either singly or in combination – to create a disability. *See Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir. 1986). All of the plaintiff's impairments must be considered in combination even when the impairments considered separately are not severe. *Hudson v. Heckler*, 755 F.2d 781, 785 (11th Cir. 1985).

For these reasons, the court concludes that the Commissioner erred as a matter of law, and that the case warrants remand for further proceedings for the ALJ to develop the record in full regarding the extent of White's additional mental and physical impairments and to consider whether he meets Listing 12.05C.

## VI.  CONCLUSION

Accordingly, this case will be reversed and remanded to the Commissioner for further proceedings consistent with this opinion.

12

A separate order will be entered.

Done this 21st day of July, 2015.


               /s/Terry F. Moorer
             TERRY F. MOORER
             UNITED STATES MAGISTRATE JUDGE